**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**WALLACE GRIGGS,**
        **Petitioner,**

**v.**                                        **Case No.  5:07cv211/RH/MD**

**WALTER A. MCNEIL,[1]**
        **Respondent.**

_____

## REPORT AND RECOMMENDATION

      **Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed a response, submitting relevant portions of the state court record.  (Doc. 13).  Petitioner has filed a reply.  (Doc. 17).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

## BACKGROUND AND PROCEDURAL HISTORY

      **On May 1, 2006, petitioner pleaded nolo contendere in the Circuit Court of Bay County, Florida to the following charges:**

      **Case Number 05-3417–dealing in stolen property**

_____

[1] **Walter A. McNeil succeeded James R. McDonough as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d)(1).**

Case Number 05-1760–grand theft

Case Number 04-1417– grand theft (violation of probation)

Case Number 05-3270–12 counts of possession of child pornography.

(Doc.13, exh. J).[2]  The standard plea waiver and consent form pursuant to which defendant entered his plea provided, generally, that:  defendant had been advised of the nature of the charges; he had not been promised leniency in exchange for his plea agreement;  he understood the rights he was waiving by entering the plea; he waived his right to appeal except with respect to an illegal sentence, he entered his plea knowingly and voluntarily; he agreed that the State could prove a prima facie case against him; he had had the benefit of counsel with respect to all matters set forth in the plea; and he could be required to pay costs and if he was not a U.S. citizen he could be subject to deportation.  (*Id.*)  The plea agreement stated that petitioner would serve a five year term of imprisonment in custody of the Florida Department of Corrections ("DOC"), followed by five years of probation, and that petitioner would receive credit for jail time already served.  (*Id.*).

At the plea hearing, defense counsel explained that petitioner had agreed to enter a plea of no contest in exchange for the sentence set forth in the plea agreement. (Exh. N at 16).  Petitioner acknowledged his signature on the plea form, and stated that he had gone over the agreement with counsel.  (*Id.* at 17).  He also confirmed his understanding of the terms of the agreement and his lack of questions.  (*Id.* at 18-19).  The court clarified that the five years DOC was for dealing in stolen property and the two grand theft charges, and that the probation was for the child pornography charges.  (*Id.* at 19-20).  After the court orally pronounced sentence, defendant inquired about the probationary term, at which time the court explained that all probationary terms were to be served concurrently.  (*Id.* at 21-22). The court also indicated that defendant would be required to work 290 hours of

---

[2]Hereafter all references to exhibits will be to those attached to Doc. 13 unless otherwise noted.

public service time, 20 hours per count in case 05-3270 and 50 hours in case 05-3417, and summarized the credit he was due for time served. (*Id.* at 23-24).   At the end of the proceedings, the following exchange occurred:

> (ASSISTANT STATE ATTORNEY): For the pornography charges it would call for him to be designated as a sexual offender.
>
> THE COURT: That's correct.  And you need to be designated and will be designated as a sexual offender.  And if there are any special terms of supervision that apply to that designation then you will be required to comply with those terms.
>
> THE DEFENDANT: What about where I live, Your Honor?  I'm already on a lease where I live.  I mean, would that affect me to have to move because there is a bus stop right out front.  I don't know if that –
>
> THE COURT: That is something you will have to talk to the probation people about.  I'm not sure that – they keep changing the laws relative to – You're not designated a sexual predator but you're designated a sexual offender. But I'm not sure, you know, I honestly can't answer that question.
>
> And I believe that covers everything.  Okay?  We need to get you fingerprinted. Good luck to you.

(Exh. N at 24-25).   The proceedings then concluded.   Judgment was entered in accordance with the terms of the plea agreement on May 1, 2006.  (Exh. K).

On June 9, 2006, defendant filed a "motion to amend/clarification judgment," requesting clarification with respect to the concurrent versus consecutive nature of his sentence.  (Exh. L).  The Circuit Court entered an order explaining that the defendant's DOC sentences on the individual charges were to run concurrent to each other, with the probationary sentence to run consecutive, and that it had entered an amended judgment to that effect.  (Exh. M).

On June 6, 2006, petitioner filed a motion to change judgment or withdraw his plea asserting that he had not been advised by his attorney that he would be

designated as a sex offender.  (Exh. N at 12).  He also alleged that his plea agreement did not mention anything about him "being a sex offender." (*Id.*) He claimed that he might have gone to trial had he been told he would be designated as such. (*Id.*)

The trial court denied his motion on June 20, 2006, stating that defendant's assertion was refuted by the transcript of his plea and sentencing. (Exh. O at 8). The court noted that after accepting defendant's plea and imposing sentence, the court informed him that he would be designated as a sexual offender.  It concluded that "Defendant did not object to this or otherwise assert that that was not his understanding of the plea agreement, even though he was given an opportunity to speak at that time."  (*Id.*)

Defendant filed a motion for rehearing and reconsideration on July 10, 2006. (Exh. O at 1).  In this motion, he asserted that he had never agreed to any term of punishment that would subject him to treatment as a sexual offender, and that the plea colloquy did not contemplate same.  (*Id.*).  He claimed that he was not given "reasonable notice" of the court's intent to designate him as a sexual offender, and further, that this designation was improper under Florida law.  (*Id.* at 2).  He maintained that his due process rights were violated when the court made the pronouncement about his sexual offender status "[a]fter all formal proceedings had concluded." He states that he was not allowed the chance to reject the plea because the request for sexual offender designation was not made until after the judge pronounced sentence, and after "the judge had suspended direct communication with Defendant." (Exh. O at 3).

The trial court denied the defendant's motion for reconsideration on July 11, 2006.  (Exh. O at 6).  It found that the defendant had not raised any new arguments or allegations of merit that had been overlooked in the previous motion.  His contention that his offense conduct, a violation of Fla. Stat. § 827.071(5), was not listed as a qualifying offense in the Florida Sexual Predator Act, Fla. Stat. §

775.21(4)(a) was correct, but irrelevant.  As the trial court made clear at the plea and sentencing,  he was designated not as a sexual *predator*, but as a sexual *offender*. (*Id.*).  Petitioner timely filed a notice of appeal of this order.  (Exh. O at 58).

On July 31, 2006, while this appeal was pending, petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850.  (Exh. N at 1-9).  In that motion, petitioner alleged that trial counsel was ineffective because he failed to inform petitioner that the State would seek to have him designated as a sexual offender.  (Exh. N at 3-5).  He also contended that his plea was not knowingly and voluntarily entered because he was unaware of this additional "sanction" that would be imposed upon him because of his plea.  (*Id.* at 6-7).

The trial court denied petitioner's motion for postconviction relief on August 2, 2006.  (Exh. N at 10).  The court noted the petitioner's previous motions to withdraw plea and for rehearing, and denied the 3.850 motion for the same reasons previously stated.  It reiterated that during the plea proceeding it had:

> informed Defendant that he would be designated a sexual offender, and Defendant did not object or otherwise assert that this was not his understanding of the plea agreement, even though he was given an opportunity to speak at that time.

(Exh. N at 10).  Petitioner filed a motion for rehearing on August 15, 2006 (exh. N at 35-37), which the trial court denied on August 17, 2006, finding that petitioner failed to raise any new arguments or allegations of merit in the motion.  (Exh. N at 39). Petitioner also appealed that order.  (Exh. N at 42).

Petitioner filed no brief in case number 1D06-4928 in the Florida First District Court of Appeal, and the state filed no response.[3]  On April 16, 2007, the appellate court per curiam affirmed the trial court's order without a written opinion.  (Exh. P); *Griggs v. State*, 954 So.2d 1159 (Fla. 1st DCA 2007); *see also* www.1dca.org/  Case Number 1D06-4928.  The mandate issued on May 14, 2007.  (Exh. Q)

---

[3]Under the Florida Rules of Appellate Procedure, because the appeal was from a summary denial, no initial brief was required for review to occur.

In Florida First District Court of Appeal case no. 1D06-4208, petitioner filed an initial brief alleging three grounds for relief.  (Exh. R).  He contended that the trial court erred in denying his request for appointment of counsel during his motion to withdraw plea, that the trial court erred in not conducting a hearing on that motion, and that the trial court erred in denying his 3.850 motion without conducting a hearing.  (Exh. R at 3-6).  The State filed a notice pursuant to Florida Rule of Appellate Procedure 9.141(b) that it would not file an answer brief.  (Exh. S).  The First District Court of Appeal affirmed, per curiam, the trial court's order without a written opinion.  (Exh. T); *Griggs v. State*, 954 So. 2d 1159 (Fla. 1st DCA 2007).  The mandate in this case also issued on May 14, 2007.  (Exh. U).

Petitioner filed the instant federal habeas petition on August 27, 2008, pursuant to the prison mailbox rule.[4]   (Doc. 1).  Respondent concedes that the petition is timely.  (Doc. 13 at 10-11).  Respondent also concedes that petitioner has exhausted his state court remedies with respect to his claims.  (Doc. 13 at 12, 17).

## DISCUSSION

### Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

---

[4]*Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule"); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (absent evidence to the contrary, court assumes that a pro se petition is delivered to prison authorities for mailing the date it was signed); *Adams v. United States*, 173 F.3d 1339 (11th Cir. 1999).

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[5]  The appropriate test was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[5]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine

whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 496 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti v. Quarterman*, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); *Jones*, 496 F.3d at 1228 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

<u>Petitioner's Grounds for Relief</u>

Although petitioner separates his claims into two grounds for relief, his motion centers around the single issue of the sexual offender designation, and the allegations contained in the two claims are somewhat intertwined and go beyond what petitioner has characterized as "ground one" and "ground two."  Basically, petitioner asserts that he was not put on notice by counsel, the terms of the written plea agreement, or the trial court that he would be designated as a "sexual offender" as a result of his nolo contendere plea.  Petitioner states that counsel knew or should have known about the mandatory sexual offender designation, but failed to advise him about it.  The written terms of the plea agreement did not disclose the mandatory sexual offender designation, and in explaining the plea, counsel did not

mention it either, allegedly telling petitioner only that he would be agreeing to a sentence of five years incarceration followed by five years probation.  Petitioner asserts that the fact that he was unaware of the mandatory sexual offender designation at the time he entered his plea renders his plea involuntary, and further claims that he would not have entered the plea had he known about the designation. He notes that he moved to withdraw his plea because of this designation.

**Ground 1.**   **The Trial court erred in denying his motion to withdraw plea without appointing conflict-free counsel in violation of defendant's rights under the Fourteenth Amendment.**

In this first ground for relief, petitioner asserts that he was entitled to the assistance of counsel to file his motion to withdraw his plea, because such a motion is not a part of collateral proceedings, but rather is a critical stage in the criminal proceedings against him.  (Fla.R.Crim.P. 3.170(1)).  He claims that because he asserted in his motion to withdraw plea that the plea was entered upon counsel's misadvice and there was a factual dispute as to counsel's conduct, appointment of counsel was warranted.  Encompassed within this ground for relief is the assertion that petitioner's plea was involuntary because he was unaware that he would be required to register as a sexual offender.

Clearly Established Federal Law

Supreme Court precedent on the right to counsel is well settled.  The United States Supreme Court has held that "the right to appointed counsel extends to the first appeal of right, *and no further.*"  *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 536 (1987) (emphasis added); *Coleman v. Thompson*, 501 U.S. 722, 755, 111 S.Ct. 2546, 2567, 115 L.Ed.2d 640 (1991) (our prior cases "established that there is no right to counsel in state collateral proceedings."); *Barbour v. Haley*, 471 F.3d 1222, 1229 (11th Cir. 2006); *United States v. Berger*, 375 F.3d 1223, 1226 (11th Cir. 2004); *Hill v. Jones*, 81 F.3d 1015, 1024 (11th Cir. 1996) (there is no right to counsel for collateral proceedings, quoting *Finley*); *Golston v. Attorney General of State of Ala.*, 947 F.2d 908, 911 (11th Cir. 1991) (also quoting *Finley*).

Where there is no right to counsel, there is no right to effective assistance of counsel. *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); *Wainwright v. Torna*, 455 U.S. 586, 587-88, 102 S.Ct. 1300, 1301-02, 71 L.Ed.2d 475 (1982) ("since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel").

To pass constitutional muster, a guilty plea must be entered knowingly, intelligently and voluntarily. *Bradshaw v. Stumpf,*, 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005). A guilty plea entered by a defendant who is "fully aware of the direct consequences" of his plea, including the actual value of commitments made by the court, prosecutor, or counsel, must stand unless shown to have been induced by threats or misrepresentation. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). Federal law is clear that a defendant need not be informed about collateral consequences of his plea, and failure to so inform him does not render the plea involuntary. *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary."); see also *McCarthy v. United States*, 320 F.3d 1230, 1234 (11th Cir. 2003) (Neither the court nor counsel is constitutionally required to make a defendant aware of collateral consequences of a plea); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985) ( "[C]ounsel's failure to advise the defendant of the collateral consequences of a guilty plea cannot rise to the level of constitutionally ineffective assistance."); *Ali v. U.S. Atty. Gen,* 443 F.3d 804, 812 n.7 (11th Cir. 2006) (citing *Campbell*, 778 F.2d at 768).

### Federal Review of State Court Decision

Petitioner was sentenced on May 1, 2006. He moved to withdraw his plea on June 6, 2006. (Exh. O at 35). Florida Rule of Criminal Procedure 3.170(l) provides:

Motion to Withdraw Plea After Sentencing. A defendant who pleads guilty or nolo contendere without expressly reserving the right to appeal a legally dispositive issue may file a motion to withdraw th plea

> within thirty days after rendition of the sentence, but only upon the
> grounds specified in Florida Rule of Appellate Procedure
> 9.140(b)(2)(A)(ii)(a)-(e) except as provided by law.

Petitioner's motion to withdraw his plea was filed more than thirty days after
sentence was imposed and thus was untimely under Fla.R.Crim.P. 3.170(l).  As a
result, the motion to withdraw petitioner's plea was not procedurally part of the
direct criminal proceedings against him.  Petitioner's attack on his plea was not
foreclosed, however, but was instead procedurally construed as a collateral attack
pursuant to Florida Rule of Criminal Procedure 3.850.

Petitioner complains that the Rule 3.850 court did not appoint counsel for
petitioner before ruling on his motion to withdraw his plea.  This decision was
neither contrary to, nor an unreasonable application of, existing Supreme Court law
on the right to counsel, as this right does not extend to collateral proceedings.

Likewise, there was no error in the trial court's failure to advise the petitioner
about the sexual offender registration prior to his guilty plea.  Under federal law, a
defendant need only be advised of the direct consequences of his guilty plea;
advising a defendant of the collateral consequences of a guilty plea is not
constitutionally required.  Examination of Florida law reveals that the required
sexual offender registration is a collateral, rather than a direct consequence of
conviction.  Section 943.0435(12), Florida Statutes provides:

> The Legislature finds that sexual offenders, especially those who have
> committed offenses against minors, often pose a high risk of engaging
> in sexual offenses even after being released from incarceration or
> commitment and that protection of the public from sexual offenders is
> a paramount government interest. Sexual offenders have a reduced
> expectation of privacy because of the public's interest in public safety
> and in the effective operation of government. Releasing information
> concerning sexual offenders to law enforcement agencies and to
> persons who request such information, and the release of such
> information to the public by a law enforcement agency or public
> agency, will further the governmental interests of public safety. *The
> designation of a person as a sexual offender is not a sentence or a
> punishment but is simply the status of the offender which is the result
> of a conviction for having committed certain crimes.*

(Emphasis added).   Furthermore, the Florida Supreme Court expressly stated in *State v. Partlow*, 840 So.2d 1040, 1043 (Fla. 2003) that "the sexual offender registration requirement is a collateral consequence of the plea."  It explained that a "direct consequence must affect the range of punishment in a definite, immediate, and largely automatic way." *Id.*  Because the registration requirement has absolutely no effect on the range of the defendant's punishment, and in fact is not a punishment, it is merely a collateral consequence of the plea. *Id.*   Based on the collateral nature of the sexual offender registration requirement, the Supreme Court of Florida held in *Partlow* that failure to inform the defendant about this requirement did not render the plea involuntary. *Id.*  Thus, the fact that neither counsel nor the trial court in petitioner's case advised him about the mandatory sexual offender designation did not render his plea involuntary.

Ground 2.   <u>The Trial Court erred in denying post-conviction relief without conducting an evidentiary hearing with respect to defendant's assertions that defense counsel mis-advised him about case 05-3270</u>

In his second ground for relief, petitioner contends that an evidentiary hearing was warranted on his post-conviction relief motion.  Petitioner explains that his allegations of counsel's constitutional effectiveness involved mixed questions of law and fact which were not conclusively refuted by the records and transcripts of the criminal proceedings, and therefore the sentencing court should have conducted an evidentiary hearing.   However, an alleged defect in a state collateral proceeding does not state a basis for habeas relief, as such a defect is an attack on the proceeding collateral to the detention rather than to the detention itself.  See *Quince v. Crosby*, 360 F.3d 1259, 1261 (11th Cir. 2004); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995).

Liberally construing the petition, petitioner also maintains in ground two that counsel was constitutionally ineffective for failing to explain that the sexual offender designation would be a consequence of his plea, for failing to object to respondent's

request for the designation and for failing to file a motion to withdraw plea in petitioner's behalf.

<u>Clearly Established Federal Law</u>

When a petitioner challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). To obtain relief under *Strickland*, a petitioner must establish (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 688, 104 S. Ct. at 2064, 2068. If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Strickland*, 466 U.S. at 697.

The focus of inquiry under the performance prong of the *Strickland* standard is whether counsel's assistance was "reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's

> judgment might be on given facts.  That a guilty plea must be
> intelligently made is not a requirement that all advice offered by the
> defendant's lawyer withstand retrospective examination in a post-
> conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763

(1970).  Therefore, to succeed on an ineffective assistance claim, Petitioner must

rebut a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance.  *Strickland*, 466 U.S. at 690.

As to the prejudice prong of the *Strickland* standard, Petitioner's burden of

demonstrating prejudice is high.  *Strickland*, 466 U.S. at 693.  The Supreme Court

has cautioned that "'[i]t is not enough for the defendant to show that the errors had

some conceivable effect on the outcome of the proceeding.'"  *Id.*  However, the Court

has also clarified that a petitioner need not demonstrate it 'more likely than not, or

prove by a preponderance of evidence,' that counsel's errors affected the outcome.

*Id.* at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the proceeding
> would have been different.  A reasonable probability is a probability
> sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in *Strickland*

for a state court to reject an ineffectiveness claim for failing to prove prejudice by

a preponderance of the evidence.  *Williams v. Taylor*, 529 U.S. at 405–406.

Finally, the law is well established that counsel is not ineffective for failing to

preserve or argue a meritless claim.  *Freeman v. Attorney General, Florida,* 536 F.3d

1225, 1233 (11th Cir. 2008); see also *Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir.

2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit);

*Chandler v. Moore,* 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to

object to "innocuous" statements by prosecutor, or accurate statements by

prosecutor about effect of potential sentence).

**Federal Review of State Court Decision**

Petitioner's ineffective assistance of counsel claim contains three parts. He first asserts that counsel was constitutionally ineffective for his failure to explain the mandatory sexual offender designation was a consequence of his plea. As discussed above, federal law provides that counsel is not ineffective for failing to discuss collateral consequences of the plea, and state law clearly provides that the sexual offender designation is a collateral consequence of conviction. Hence, counsel committed no constitutional error in this regard.

Petitioner next contends that counsel was ineffective for failing to object to the state's request for this designation. Section 943.0435(12), Florida Statutes plainly provides that a person convicted of certain crimes will be designated as a sexual offender. There was no legal basis to object to the state's request for such a designation, and counsel was not constitutionally ineffective for failing to file a futile motion.

Finally, petitioner asserts that counsel was ineffective for failing to file a motion to withdraw his plea. It does not appear from the record that petitioner requested that counsel file such a motion. However, even if petitioner had made such a request, absent a valid legal basis to support such a motion, counsel cannot be deemed constitutionally ineffective for failing to move to withdraw petitioner's plea. Petitioner's alleged ignorance of the collateral consequences of his plea do not render it unconstitutional.

## CONCLUSION

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue. For the foregoing reasons, petitioner's claims do not warrant federal habeas relief, and his petition should be denied.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Walter A. McNeil has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

That the petition for writ of habeas corpus (doc. 1) challenging the convictions and sentences in *State of Florida v. Wallace Griggs*, in the Circuit Court of Bay County, Florida, case number 05-3270, be DENIED and the clerk be directed to close the file.

At Pensacola, Florida this 23rd day of October, 2008.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).